THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ARMAND CIOFFI, Appellant.

First Department, June 28, 1955.

*Otto F. Fusco* appellant.

*Walter E. Dillon* of counsel (*Daniel V. Sullivan, District Attorney,* Bronx County, attorney), for respondent.

CALLAHAN, J. Defendant was indicted by the Grand Jury of Bronx County on four misdemeanor counts, two for impairing the morals of minors, and two for assault in the third degree. The first count specified that on the 28th day of January, 1954, the defendant unlawfully permitted a female child, one " Mary Doe ",* of the age of eleven years to be placed in a situation where her morals would be impaired; a second count charged assault in the third degree upon said " Mary Doe " upon the same date; the third count charged impairing the morals of one " Jane Roe ", an infant then of the age of twelve years; and the fourth count charged assault in the third degree upon the said " Jane Roe ", both on the same date.

The charges were joined in one indictment, pursuant to the provisions of section 279 of the Code of Criminal Procedure, as crimes of the same or similar character.

The case was tried before the court and a jury. The defendant was convicted on both counts of assault, but acquitted on the other counts. On the 13th day of July, 1954, a judgment was entered reciting the conviction for assault in the third degree on the second and fourth counts and adjudging that the defendant be committed to the New York County Penitentiary under count two for an indeterminate period. The judgment stated that the sentence on the fourth count was " deferred." Defendant appeals from each and every part of the judgment, and asks for reversal of the entire judgment of conviction. While the defendant urges several assignments of error, we find that there is merit only in the contention that his rights were violated upon the trial when " Jane Roe ", two other girls who had been in her company, and a city detective were all permitted to testify that a few days after January 28, 1954, a group of photographs was examined by the girls at the suggestion of the detective and the girls selected the defendant's photograph from the group.

The People contend that we may not consider this claim of error. Their position is that although the defendant has been found guilty of two separate crimes, judgment has been entered on only one of them because of the deferment of sentence on the fourth count. The evidence concerning the photographs, the People say, was received only in support of the fourth count, so that the question of error in that regard is not presently reviewable.

We would be most reluctant to concur in this view. It would mean that the defendant would be compelled to take two appeals

* This opinion uses fictitious names throughout in referring to the infants involved in this case.

to determine his rights, or to move to compel the court to impose sentence on the fourth count as preliminary to appeal from his conviction thereon. It is our opinion, under all the circumstances of the case, that section 517 of the Code of Criminal Procedure affords the defendant the right to appeal from the entire judgment and disposition of both the second and the fourth counts of the indictment, even though sentence was imposed on only one of them. At least, this would seem to be the common-sense view in a case such as this where we have a multi-count indictment, one trial, a single judgment and a complete record on appeal.

Section 517 of the Code of Criminal Procedure provides:

"§ 517. In what cases appeal may be taken by defendant.

"An appeal may be taken by the defendant as of right from a judgment on a conviction in a criminal action or proceeding as follows: * * *

"3. Where the judgment is other than of death, elsewhere than in the city of New York, unless otherwise specially provided by law, (a) to the appellate division of the supreme court of the department in which the conviction was had, from a conviction by the supreme court or a county court * * *

"Upon any appeal from a judgment on a conviction, any actual decision of the court in an intermediate order or proceeding forming a part of the judgment-roll, as prescribed by section four hundred eighty-five, may be reviewed. *For every purpose of an appeal herein, including a review of such intermediate orders or proceedings, a conviction shall be deemed a final judgment although sentence has been or may thereafter be suspended by the court in which the trial was had, or otherwise suspended or stayed;* but a judgment of affirmance upon any such appeal shall not operate to exclude an appellant, otherwise entitled thereto, from the right of suffrage." (Emphasis supplied.)

It is evident that the trial court sought to sentence defendant under the second count to an indefinite term in the penitentiary for correctional treatment under article 7-A of the Correction Law, and to suspend the imposition of sentence on the fourth count until completion of the first commitment. This would permit the court to ascertain whether further correctional treatment was required after the first sentence was served. It would seem that the trial court construed *People ex rel. Gordon* v. *Ashworth* (290 N. Y. 285) to require or authorize such a course. We need not decide at this time whether this was a proper con-

struction of the *Gordon* case or a proper exercise of the court's power in respect to sentence (see *Matter of Hogan* v. *Bohan,* 305 N. Y. 110). For the present, it is enough to decide whether the conviction on both counts is reviewable, or only the second count as contended by the People.

Although the judgment recites that the court " deferred " sentence on the fourth count, we think that, in effect, it suspended the imposition of sentence. In any event, the imposition of sentence on the fourth count was " otherwise suspended or stayed " within the meaning of section 517. These words should not be construed as words of art used in any technical or narrow sense, but should be given a broad connotation to accomplish the purpose of the statute, viz., to facilitate the right of appeal. A sentence " otherwise suspended or stayed " should be construed, therefore, to include a case like the present where several crimes are united in a single indictment pursuant to section 279 of the Code of Criminal Procedure, and a judgment has been entered imposing a prison sentence on one count alone, but " deferring " sentence on the others. Merely because the court used the word " deferred " instead of " suspended " with respect to sentence on one of the counts should not require two appeals. We are cognizant that our construction of the court's action as a suspension of the imposition of sentence may have some bearing on the power of the court to impose sentence on defendant on the fourth count in the future, but we need not anticipate or attempt to settle any such problem at this time.

Having decided that the convictions on both counts are appealable, we return to a consideration of the merits of the defendant's claim of error in the admission of evidence. He contends, as already noted, that the testimony concerning the selection of his photograph constituted error because it was received at a time when identity was not in issue, and that in any event it is not evidence of prior identification.

Section 393-b of the Code of Criminal Procedure provides:

" § 393-b. *Testimony of previous identification.*

" When identification of any person is in issue, a witness who has on a previous occasion identified such person may testify to such previous identification."

This section is in derogation of common law and must be strictly construed (*People* v. *Spinello,* 303 N. Y. 193; *People* v. *Trowbridge,* 305 N. Y. 471). It has been held that testimony as to the selection of a defendant's photograph out of court is not evidence of prior identification (*People* v. *Hagedorny,* 272 App. Div. 830). Whether it is or not would merely seem to

affect the extent of any error in the present case. We must agree that receipt of testimony as to the selection of the photograph involved error in that it was self-serving and improperly used to bolster evidence of identification (*People* v. *Jung Hing*, 212 N. Y. 393). Even if it can be regarded as evidence of prior identification, section 393-b would at most justify receipt of the testimony of the three girls who were present at the time of the crime (*People* v. *Spinello, supra*). That permitted to be given by the detective would be error in any event (*People* v. *Trowbridge, supra*). But it does not follow that such error in the receipt of evidence calls for reversal of the judgment of conviction in this case. We are required to ascertain whether a substantial right of the defendant was affected (Code Crim. Pro., § 542).

Perhaps, therefore, a more detailed reference to the facts will be useful at this point. Shortly after 3:00 P.M. on January 28, 1954, this defendant, a police officer in civilian clothes, was arrested after leaving the hallway of premises 2241 Creston Avenue, which is in the west part of The Bronx. He later stated that he had come from his home in the East Bronx on a bus, got off· in the vicinity, and had gone into 2241 Creston Avenue looking for the building superintendent to inquire about a vacant apartment. The infant " Mary Doe " testified that after getting close to her by ruse in the hallway of the building, the defendant had made an assault upon her by laying his hands upon her person in an indecent manner. When a voice was heard from upstairs, the girl indicated that it was her mother calling, and the defendant ran from the building. The mother accompanied by the girl searched the neighborhood in the family car. The infant pointed out to the mother the figure of a man running. They then met Police Officer Pollack in uniform, and told him of the occurrence. After searching a schoolyard in the direction of which the culprit had run, the mother, the child, and Officer Pollack cruised around the neighborhood in the mother's car. After a few minutes, at a signal from the mother Pollack left the car and walked toward the defendant, who was approaching on the sidewalk. The defendant was halted by Pollack, and searched. While this was being done, the mother struck the defendant. According to the mother's testimony and that of Pollack, the defendant at that time asked that the mother give him " a break ", and said that he had been receiving psychiatric treatment, and requested that she call a doctor whose name defendant furnished. " Mrs. Doe " made a telephone call to the doctor, and then agreed to withdraw the charges. The

defendant in a statement to the District Attorney and in his testimony on this trial, while denying an assault on the infant "Mary Doe" or having asked for a "break", conceded he had been in the hallway of 2241 Creston Avenue. He also admitted that he had told the infant's mother that he was under the care of a doctor for a nervous condition, and that he gave her the name of the psychiatrist who was treating him.

As to the incident involved in the second count of the indictment, therefore, we have a case where there is no real dispute as to the identity of the defendant, and the controversy relates solely to whether he had committed any act that involved an assault.

Defendant, after having been allowed to depart, was arrested later on the same evening after the intervention of higher police officials. It is apparent from the evidence that several days later detectives engaged on the case received a complaint of a somewhat similar assault on another infant, "Jane Roe", alleged to have occurred about 2:00 p.m. on January 28, 1954, one hour earlier than the "Mary Doe" incident, in the premises 2315 University Avenue, Bronx. The police gathered a group of photographs, including one of the defendant, and showed them to "Jane Roe" and two other girls who had been her companions. All three selected defendant's picture as that of the man who accosted them. Defendant, with the consent of his counsel, was then brought to the District Attorney's office in Bronx County, and "Jane Roe" and her companions observed him in person. The address 2315 University Avenue is in the westerly section of The Bronx and less than a mile from 2241 Creston Avenue. The three girls positively identified defendant upon the trial as the man who accosted them in the building at the University Avenue address, and "Jane Roe" told of an indecent act of assault on her person by the defendant.

In the course of their direct testimony upon the trial, the three girls were permitted to tell how the group of photographs had been shown to them, and their selection of defendant's photograph. A detective gave like evidence. At that time, the defendant had not as yet testified. No impeaching evidence had been offered with respect to the girls' testimony. When defendant did take the stand, however, he denied ever having seen "Jane Roe" or having been in the basement of premises 2315 University Avenue.

Aside from the questioned testimony, the evidence as to the identification of this defendant and the circumstances indicating his guilt were clear and convincing. Insofar as the attack

upon " Mary Doe " is concerned, there was no real dispute as to identification. We fail to see how the testimony of identifying the photograph could have any effect on the question of guilt under the second count. The fact that a police officer concededly requested a woman, who was about to make a complaint against him for an indecent assault on her child, to consult his psychiatrist before making the charges against him was strongly indicative of a consciousness of serious misbehavior. Therefore, as to count two there would seem to be no reason whatever why the judgment should not be affirmed.

As to the finding of guilt on count four there remains the question of whether error committed in receiving the testimony in respect to the photograph affected a substantial right of defendant. The testimony of the identifying witnesses with respect to the incident involving " Jane Roe " was clear and unequivocal. It was supported by the circumstance of the full opportunity of these witnesses to observe defendant and by their description of the clothes he wore. The defendant's story, when first interviewed by an assistant district attorney, was that he had reached the vicinity of Creston Avenue about one o'clock. Upon the trial he insisted that he left the East Bronx at a later hour, and had not arrived at Creston Avenue until nearly 3:00 P.M. This might well have indicated to the jury that he changed his story as to the time of his visit to the West Bronx in order to avoid implication in the University Avenue incident. After full consideration of all the facts, we find that in the present case the receipt of the improper testimony did not affect any substantial right of defendant. We do not have a situation before us such as existed in the *Jung Hing, Trowbridge* and *Hagedorny* cases (*supra*) where that was a strong conflict as to the evidence of identification. True, there was a complete denial of the " Jane Roe " incident by the defendant, but we have such clear and positive identification by the eyewitnesses, which was supported by the circumstances, that the error in referring to the photograph would not seem to warrant reversal even as to the conviction on count four of the indictment.

The judgment appealed from should be affirmed in all respects under the provisions of section 542 of the Code of Criminal Procedure.

BREITEL, J. (dissenting). Error was committed when the court permitted, over objection, testimony of previous identifications given by persons other than the identifiers. (*People* v. *Trowbridge,* 305 N. Y. 471.) Such error was prejudicial since (1) it pervaded the entire trial, despite the fact that two separate

misdemeanors were involved, and (2) identification of defendant as the perpetrator of the acts was disputed, and, as in most cases involving sex offenses, is of crucial significance. Consequently, the conviction based on the second count of the indictment may not stand.

Moreover, the court was in error in deferring sentence on the fourth count of the indictment after the jury's finding of guilt. As so recently stated by the Court of Appeals, '' following an adjudication of guilt, sentence must be imposed; it may not be deferred or postponed indefinitely ''. (*Matter of Hogan* v. *Bohan,* 305 N. Y. 110, 113.) The case of *People ex rel. Gordon* v. *Ashworth* (290 N. Y. 285) is not to the contrary, the court there merely holding that, where sentence has been deferred on one of two unrelated misdemeanors and defendant elects to wait until sentence on the other misdemeanor has expired, he may be sentenced on the first, and is not entitled to freedom. The *Gordon* situation is not apposite. Here defendant does not seek freedom at this point, but sentencing. To this he is entitled, particularly where his appeal from the finding of guilt on the fourth count is frustrated by the deferment of sentence. (*Matter of Hogan* v. *Bohan, supra.*)

Accordingly, the judgment of conviction should be reversed and a new trial granted.

PECK, P. J., COHN and RABIN, JJ., concur with CALLAHAN, J.; BREITEL, J., dissents and votes to reverse and grant a new trial, in opinion.

Judgment affirmed.